Enio A. TOZZI, Plaintiff,

v.

UNION RAILROAD
COMPANY, Defendant.

Civ. A. No. 88–1559.

United States District Court,
W.D. Pennsylvania.

Sept. 22, 1989.

Stanley M. Stein, Feldstein Grinberg Stein & McKee, Pittsburgh, Pa., for plaintiff.

Patrick W. Ritchey and Robert B. Cottington, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

COHILL, Chief Judge.

Plaintiff's complaint was referred to United States Magistrate Gary L. Lancaster in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 3 and 4 of the Local Rules for Magistrates.

On August 31, 1989, the Magistrate filed his Report and Recommendation, which concluded that summary judgment should be granted in favor of defendant. Objections to the Magistrate's Report and Recommendation were filed by plaintiff on September 13, 1989. After *de novo* review of the pleadings and documents in the case, together with the Report and Recommendation and objections thereto, the following order is entered this 22nd day of September, 1989:

IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.

▬ The Report and Recommendation filed by Magistrate Lancaster is adopted as the Opinion of the Court.

## MAGISTRATE'S REPORT AND RECOMMENDATION

GARY L. LANCASTER, United States Magistrate.

Plaintiff, Enio A. Tozzi, filed this civil action against Union Railroad Company alleging that defendant violated the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621-634. Before the court is defendant's motion for summary judgment. For the following reasons, the motion should be granted.

## I. BACKGROUND

The following material facts are undisputed. Defendant provides rail freight service on a 17 mile line between North Bessemer, Pennsylvania, and Clairton, Pennsylvania, as well as on several short branch lines. This service is closely tied to the steel industry located in Monongahela River Valley ("Mon Valley"), with the bulk of defendant's business consisting of moving raw materials and finished products and performing in-plant switching for Mon Valley steel mills. However, the decline in the Mon Valley steel industry in recent years greatly reduced defendant's freight traffic and revenues. This decline in business and in the concomitant reduction in the size of its fleet has resulted in less work for defendant's mechanical department. As a result, defendant determined to streamline certain management positions in that department. Accordingly, during the summer of 1986, management determined that one person could assume the duties of both the Chief Clerk–Locomotive and Chief Clerk–Car, and thus consolidated the two positions into one entitled Chief Clerk–Car and Locomotive. At the time, the Chief Clerk–Locomotive job was held by plaintiff. The job of Chief Clerk–Car was held by Jean Tester, a fifty-four (54) year old woman.

There is no dispute that both plaintiff and Tester performed the functions of their respective positions in a competent manner. Nor is there a dispute that either could perform the functions of the consolidated position. However, when faced with the need to consolidate the two positions, defendant chose to retain Ms. Tester. Plaintiff was, in essence, then forced to retire.[1] Plaintiff contends that the decision not to

---

1. Plaintiff agreed to retire in exchange for greater pension (70/80 mutual pension), and other benefits than those to which he was entitled. The 70/80 mutual pension package is a special early retirement pension that provides more lucrative benefits to a retiring employee than does the standard retirement plan. *See generally E.E.O.C. v. U.S. Steel Corp.,* 671 F.Supp. 351 (W.D.Pa.1987). Specifically, this plan provided for supplemental payments of $400.00 per month in addition to plaintiff's normal retire-ment benefits until he became eligible for a railroad retirement annuity in April, 1988. He also signed a release acknowledging the voluntariness of his decision to choose early retirement and releasing defendant from any claims in connection with his employment, including claims under the ADEA. Because our decision is based on the merits of the claim, we do not reach the issue of whether this release bars the instant action. *Cf. Cirillo v. Arco Chem. Co.,* 862 F.2d 448 (3d Cir.1988).

offer him the new consolidated position was due in whole or in part to his age (60).

## II. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. Rule 56(c). A "material fact" is one whose resolution will affect the ultimate determination of the case. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982). A genuine dispute about a material fact arises when "the evidence is such that a reasonable jury could return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–2512, 91 L.Ed.2d 202 (1986).

■ Contrary to the traditional view that summary judgment is a drastic remedy, to be used sparingly, the Supreme Court has now made clear that Rule 56(c) was designed to facilitate, not inhibit, the granting of summary judgment. *See Anderson, id.* at 242, 106 S.Ct. at 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To demonstrate entitlement to summary judgment, the defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. The defendant need only point out the absence or insufficiency of the plaintiff's evidence offered in support of those essential elements. *Id.* at 322–23, 106 S.Ct. at 2552–53; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Houser v. Fox Theatres Management Corp.*, 845 F.2d 1225, 1229 (3d Cir.1988). Once that burden has been met, the plaintiff must identify affirmative evidence *of record* which supports each essential element of his cause of action. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

■ Factual specificity is required of one who opposes a motion for summary judgment because summary judgment is designed to go beyond the pleadings to assess whether a genuine issue of material fact exists and whether a trial is necessary. *Celotex*, 477 U.S. 317, 106 S.Ct. 2548. Therefore, in order to defeat a properly supported motion for summary judgment, a plaintiff can not merely restate the allegations of his complaint, *Farmer v. Carlson*, 685 F.Supp. 1335 (M.D.Pa.1988), nor can he rely on self-serving conclusions unsupported by specific facts in the record. Plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. If the plaintiff fails to provide such evidence, then he is not entitled to a trial and defendant is entitled to summary judgment as a matter of law.

■ Thus, the mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. *See Graham v. Collier*, 688 F.Supp. 146, 147 (D.Del.1988). Rather, where the party with the burden of proof fails to demonstrate the existence of an element essential to his case, "there can be 'no genuine issue as to any material fact,' given a complete failure of proof concerning an essential element of the non-moving party's case, necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

With these concepts in mind, we turn to the merits of the motion.

## III. DISCUSSION

### A.

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To recover, "a plaintiff must prove by a preponderance of the evidence that age was the determinative factor in the employer's decision." *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 789 F.2d 253, 256 (3d Cir.1986) (citations omitted).

The three-stage shifting burden of proof originally developed in the context of title VII employment discrimination cases, *see*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980), has been adapted for use in claims filed under the ADEA. *See, e.g., Maxfield v. Sinclair International*, 766 F.2d 788 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). First the plaintiff has the burden of making out a *prima facie* case of employment discrimination. In the absence of direct evidence, a plaintiff may establish a *prima facie* case of discrimination in the failure to hire context by proving by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was rejected for the position despite being qualified; and (4) the employer ultimately filled the position by a person sufficiently younger to permit an inference of age discrimination. *See Maxfield v. Sinclair International*, 766 F.2d 788, 793 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). *See generally, Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897–98 (3d Cir.1987), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

Once plaintiff has established a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the failure to hire. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If such a reason is offered, the plaintiff then has the burden of showing that the proffered reason was in fact a pretext for invidious discrimination. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id.* Because of this structure of proof, an ADEA defendant can prevail on a summary judgment motion either by showing that the plaintiff can raise no genuine issue of fact as to one or more elements of plaintiff's *prima facie* case; or, by introducing evidence of nondiscriminatory animus and showing that plaintiff can raise no genuine issue of fact as to whether the proffered reason is a pretext for discrimination. *Spangle v. Valley Forge Sewer Authority*, 839 F.2d 171, 173 (3d Cir.1988) (citation omitted).

### B.

■ Defendant's only challenge to the *prima facie* case is that Ms. Tester, at age 54, is not "sufficiently younger" than plaintiff to support the final element of a *prima facie* case. In this regard, plaintiff need not show that he was replaced by an individual not in the protected class, i.e., someone below age 40. *Maxfield v. Sinclair International*, 766 F.2d 788, 792–93 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). However, plaintiff must show that the favorably treated employee was "sufficiently younger to permit an inference of age discrimination." *Id.* at 793. In *Maxfield*, the court found that a twenty-three year difference was sufficient to raise the inference. In *Healy v. New York Life*, 860 F.2d 1209 (3d Cir.1988), the court ruled that nine years difference was sufficient. However, the court is admonished to avoid a mechanistic approach to the *prima facie* test. *See Pace v. Southern Railway System*, 701 F.2d 1383 (11th Cir.1983), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Accordingly, we look not only to the actual age difference, but to the surrounding circumstances to determine if plaintiff has raised an inference of discrimination. Thus, in *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981), a five year difference plus substantial evidence of plaintiff's qualification for the position established a *prima facie* case.

■ While the six year difference between plaintiff and Ms. Tester is not great, a jury acting reasonably could conclude that it is sufficient to raise an inference of discrimination, particularly when coupled with the fact that plaintiff was qualified for the position and that plaintiff was eligible for the 70/80 plan while Ms. Tester was not. We conclude plaintiff has established a *prima facie* case.

## C.

■ Defendant next claims that it is entitled to judgment because plaintiff has offered no evidence to show that its decision to hire Ms. Tester was a pretext for age discrimination rather than a reasonable business decision.[2] Among the objective indicia of pretext are employment decisions that represent a departure from standard business practice, suspect methods of decision-making, proof of a history of discrimination or of a hostile working environment, and statistical proof. *See Warren v. Halstead Industries, Inc.*, 802 F.2d 746, 752–53 (4th Cir.1986). It is axiomatic that plaintiff can not create an issue for the jury simply by challenging defendant's business judgment. *See Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981) ("The Age Discrimination in Employment Act ... was not intended as a vehicle for judicial review of business decisions.").

■ Defendant explained its decision to retain Ms. Tester as follows:

The duties of the consolidated position of chief clerk-car and locomotive were assumed on October 1, 1986 by Jean A. Tester, the incumbent chief clerk-car who was 54 years old at the time. Union Railroad determined that Jean Tester possessed certain job skills, not possessed by plaintiff, which made her more qualified to take over the position. Jean Tester knew the office procedures for compliance with the rules and regulations of the Federal Railroad Administration ("FRA") and the American Association of Railroads ("AAR") governing cars, plaintiff did not. Although plaintiff would have been familiar with the rules governing locomotives, the car rules were far more extensive, in fact the amount of time required by the chief clerk to comply with the rules and regulations for cars was approximately five times greater than that which was required with respect to locomotives.

Jean Tester also knew how to operate word processing systems, plaintiff did not. Moreover, Jean Tester showed initiative by learning word processing skills on her own. In 1986, personal computers were installed in defendant's Monroeville office where Jean Tester was employed. The Car Department files were then transferred to these computers. Jean Tester prepared herself in advance for this change by learning word processing through in-office training and evening courses at a local college.

Jean Tester also performed office work for the Mechanical Engineer of the Bessemer and Lake Erie Railroad Company as chief clerk-car and was required to perform as chief clerk-car and locomotive. Jean Tester also took dictation proficiently. All of these job skills were essential to the performance of the newly created position of chief clerk-car and locomotive." Defendant's Memorandum in Support of Defendant Union Railroad Company's Motion for Summary Judgment, at 7–9 (citations to record omitted).

Standing alone, this rationale establishes a legitimate business decision and shifts the burden to plaintiff to show pretext. In an effort to do so, plaintiff argues the record evidence reveals genuine issues of pretext because: 1) the skills mentioned are not listed in the job description; 2) defendant's files were not computerized until several months after the consolidation; and 3) he had dictation skills in 1960.

In reply, defendant initially points out that the job description is just that, a job description, not a skills description and, therefore, the lack of skills listing does not show defendant's articulated reasons are pretextual. We agree.

Additionally, it is undisputed that word processing equipment was installed in 1986, that Ms. Tester had taken the initiative to become proficient with the equipment on her own, that she used the office equipment in 1986 to train herself, and that the department records were actually compu-

---

**2.** Plaintiff does not dispute that defendant's decision to consolidate the positions was based on

the economic realities of the market.

terized the next year. While plaintiff makes much of the fact that the files were not actually computerized until 1987, it is difficult for the court to understand how this shows pretext. To the contrary, it appears to be good management for staff to be prepared for such technological change prior to its implementation. Importantly, plaintiff points to no evidence showing Ms. Tester did not possess word processing skills or that such skills were not necessary for the position.

Plaintiff also argues that Ms. Tester's ability to take dictation was not a sufficient reason to choose her. He offered a copy of his own personnel record which indicates that when he was hired in 1960, he took dictation at the rate of 90 words per minute. Yet, plaintiff does not aver his current ability to take dictation nor challenge the need for dictation skills in the consolidated position.

Next, plaintiff contends that he was not given the job because he was eligible for the 70/80 mutual pension, and Ms. Tester was not. Therefore, age was a determining factor in defendant's decision. While it cannot be disputed that pension benefit eligibility and age are "inexorably linked," see White v. Westinghouse Electric Co., 862 F.2d 56, 62 n. 9 (3d Cir.1988) (citing EEOC v. City of Altoona, 723 F.2d 4, 6 (3d Cir.1983), cert. denied, 467 U.S. 1204, 104 S.Ct. 2386, 81 L.Ed.2d 344 (1984), alone it does not show a nexus between age and discriminatory motive. Plaintiff must point to evidence of record which shows that defendant's decision was based on this criteria. Although management employee Hellyer testified the company preferred to reduce staff through voluntary retirement, this does not support an inference that Tozzi was terminated because he was eligible for the 70/80 plan. To allow such an inference would penalize an employer for what may be considered a laudable business practice.

Finally, plaintiff asserts that defendant's reliance on Ms. Tester's knowledge of governmental regulations is disingenuous. The Federal Railroad Administration (FRA) issues regulations, some of which apply to cars and others to locomotives. Obviously, Ms. Tester was familiar with car regulations and plaintiff with locomotive regulations. On defendant's behalf, Hellyer testified that the car reports, prepared in compliance with FRA regulations, required five times more preparation time than did the locomotive reports. He also testified that while he had no doubt plaintiff could have learned the FRA-car regulations, he preferred to retain Ms. Tester because she was already familiar with the regulations which comprised the predominate part of the job. This assertion is supported by the fact that in 1986, defendant owned, repaired, maintained and kept records for 1,103 cars and only 101 locomotives,[3] thus accounting for the greater amount of time expended in car-related record keeping. Plaintiff has presented no evidence to rebut this or to question its application.

## IV. CONCLUSION

Plaintiff has failed to present any evidence which would raise a genuine issue that age played a role in his treatment. Although he has attempted to impugn defendant's business reasoning, at most he has raised only an issue of whether his supervisors were mistaken in their appraisal of his skills. See generally Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369 (5th Cir.1980) (plaintiff's argument established inference of poor management and decision making, but not basis for an inference of discrimination); see also Pace v. Southern Railway System, 701 F.2d at 1391–92.

Focusing upon plaintiff's evidence to rebut defendant's offer of a legitimate, common, nondiscriminatory reason for not offering him the position, the court finds that no trier of fact could reasonably find from the record presented that defendant's avowed reasons for choosing Ms. Tester over plaintiff to be pretextual for age discrimination. Plaintiff has simply failed to provide any evidence that would enable a trier of fact to determine that age was a

---

3. See Hellyer deposition at 57–59.

determinative factor in defendant's decision. Accordingly, defendant's motion for summary judgment should be granted.

Dated: August 31, 1989.