**Paul L. NAAS, Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant.**

Civ. A. No. 92–250.

United States District Court, W.D. Pennsylvania.

Jan. 29, 1993.

Colleen E. Ramage, Joel Sansone, Entenmann & Sansone, Pittsburgh, PA, for plaintiff.

Denise A. Bailey, Louis Carr, Westinghouse Elec. Corp., Pittsburgh, PA, for defendant.

### MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

### I. INTRODUCTION

Plaintiff Paul L. Naas (Naas) was an employee of defendant Westinghouse Electric Corporation (Westinghouse) for thirty-three (33) years until he was discharged as part of a plantwide reduction in force (RIF), effec-

tive October 1, 1991. At the time of his termination,[1] Naas, then age sixty (60), was employed as a "Senior Systems Consulting Analyst." On October 29, 1991, Naas timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that his termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Thereafter, plaintiff filed a complaint in this Court against Westinghouse, alleging violation of the ADEA.[2]

Currently before the Court is the defendant's Motion for Summary Judgment. Westinghouse asserts that: (1) Naas cannot establish a prima facie case of age discrimination; (2) if Naas has established a prima facie case, it has articulated legitimate, nondiscriminatory reasons for terminating him; and (3) Naas cannot show that the reasons articulated by it are pretextual.

## II. DISCUSSION OF LAW

### A. *Summary Judgment*

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment " . . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." "[T]he requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue of fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15; *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987). The presence or absence of any plausible motive to engage in conduct is relevant to whether a genuine issue of fact exists within the meaning of Rule 56(e). *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 597, 106 S.Ct. 1348, 1361–62, 89 L.Ed.2d 538 (1986).

Once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories and admissions on file, in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark, supra* at 144.

### B. *Age Discrimination in Employment Act*

■ The ADEA proscribes employers from failing to hire, discharging, or "otherwise discriminat[ing] against any individual . . . because of such individual's age," 29 U.S.C. § 623(*l* ) so long as he or she is within the statutorily protected class of individuals who are at least 40 years of age. 29 U.S.C. § 631(a). To prevail in a disparate treatment action, an ADEA "plaintiff must prove by a preponderance of the evidence that age was a determinative factor in the employer's decision." *Billet v. Cigna Corp.,* 940 F.2d 812, 816 (3d Cir.1991) (citation omitted). In theory, this ultimate burden of proving intentional age discrimination remains with the plaintiff at all times. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395 (3d Cir.1984), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

---

1. Westinghouse prefers the phrase "permanent job separation" to plaintiff's use of the word "termination" to describe the effect of the RIF on Naas. Defendant's Answer to Plaintiff's Interrogatory No. 18, 19. For the purposes of this opinion, a "discharge" is a "termination" is a "permanent job separation," and, consistent with ordinary English usage, the first two, but not the latter, are used interchangeably to describe the event.

2. This action was transferred to my docket on November 17, 1992, upon Judge Timothy K. Lewis' ascent to the United States Court of Appeals for the Third Circuit.

■ Under the familiar burden-shifting rules of proof established by courts "to ease the evidentiary burdens on employment discrimination plaintiffs," *Thornbrough v. Columbus and Greenville R. Co.,* 760 F.2d 633, 638 (5th Cir.1985), the plaintiff must first demonstrate what has been termed a "prima facie case."[3] This means that in a reduction in force case, such as the instant action, the plaintiff must show that he (1) is a member of the protected class, (2) was discharged from a job, (3) for which he was qualified, and (4) was replaced by or treated less favorably than another employee not in the protected class. *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 793 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 (3d Cir.1983), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Once established, the plaintiff's prima facie case raises an inference of intentional discrimination by the defendant. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). However, if the plaintiff fails "to limn a prima facie case, the inference of discrimination never arises, and the employer's motion for summary judgment will be granted." *Dodge v. Susquehanna Univ.,* 785 F.Supp. 502, 505 (M.D.Pa.1992) (quoting *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 824 (1st Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)).

■ If the plaintiff establishes a prima facie case of age discrimination, the defendant then has the burden of producing evidence tending to prove that its action was motivated by some "legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. If the defendant can articulate a nondiscriminatory reason, "the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* at 255, 101 S.Ct. at 1094–95.

■ In order to avoid summary judgment, the plaintiff must establish "by competent evidence," *Ezold v. Wolff, Block, Schorr and Solis–Cohen,* 983 F.2d 509 (3d Cir.1992), "that the employer's proffered explanation is subject to factual dispute." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff may do so "by means of indirect proof that the employer's reasons are pretextual *without presenting evidence specifically relating to age.*" *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 898 (3d Cir.1987) (emphasis added), *cert. dismissed* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In this circuit,[4] the plaintiff does not have to show that the employer's purported reason for its action was "illegitimate" in the sense that it was motivated by illegal discriminatory animus; rather, he has only to criticize it effectively enough to raise a doubt as to whether it was the *true* reason for the action. *Id.* 814 F.2d at 899; *see also Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1113 (2d Cir. 1988) (ADEA plaintiff can establish pretext by showing that the employer's articulated reasons are "ridden with error").

■ At this pretext stage, it would of course be helpful, but is not necessary, for the plaintiff to adduce more evidence of discrimination, whether direct or circumstantial, than he did in making his prima facie case.[5] In short, the ADEA plaintiff need only allege a prima facie case of age discrimination, and as long as he can produce evidence raising any suspicion regarding the accuracy of the

3. As Judge Posner has stated: "[T]he *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] 'prima facie case' is not a 'real' prima facie case, in the conventional sense of a case strong enough to withstand a defendant's motion for summary judgment, because it does not entitle the plaintiff to a trial. More properly termed a presumption, it is a device for making the defendant speak, and once he does speak it falls out." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir.1989) (citations omitted).

4. There is a split among the circuits over the question of whether an employment discrimination plaintiff must produce any evidence of discrimination. *See generally* Lanctot, The Defendant Lies and the Plaintiff Loses: The Fallacy of the "Pretext Plus" Rule in Employment Discrimination Cases, 43 Hastings L.J. 57 (1991).

5. "[T]here may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

defendant's explanation, his case is safely buffeted through the dangerous waters of summary judgment by inferences and presumptions of unlawful discrimination. *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1396 (3d Cir.1984), *cert. denied* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984) ("[A] showing that a proffered justification is pretextual is itself *equivalent* to a finding that the employer intentionally discriminated.").

### III. ANALYSIS

#### A. *Prima Facie Case*

■ Although the plaintiff's burden at this stage is "not onerous," *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94, Naas has not proved even a prima facie showing of intentional discrimination in the circumstances surrounding his discharge. The first two elements of plaintiff's prima facie case are undisputed: (1) plaintiff was a member of the ADEA protected class on or about July 23, 1991, when he was informed that (2) his employment with Westinghouse would end effective September 30, 1991. As plaintiff notes in his Brief In Opposition to Defendant's Motion for Summary Judgment, it is also undisputed that Naas was qualified *to hold the position of Senior Information Systems Analyst* with Westinghouse. However, after the RIF, no such position existed. The bulk of Naas' responsibilities as Senior Information Systems Analyst, such as daily backup of computer files, application of program temporary fixes, and clerical computer functions, are now either automated or are contracted out. Defendant's Response to Plaintiff's Second Set of Interrogatories 5–6. Naas also maintained the IBM Operating System and passwords at defendant's Homewood Plant. But since the RIF, Westinghouse has not needed anyone to perform these "insignificant" functions. *Id.* 7.

■ Plaintiff was a qualified Senior Information Systems Analyst. That job has been eliminated. In order to establish a prima facie case in the RIF context, it is not enough for plaintiff to show that he was discharged from a job for which he was qualified, while the defendant retained someone, anyone younger, regardless of position. *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 n. 1 (3d Cir.1988), *cert. denied* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989). "[T]he essence of a RIF is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." *Id.* 860 F.2d at 1220. Rather, plaintiff must show that he was qualified to stay on with the defendant in its post-RIF structure, while the defendant replaced him with, or otherwise treated more favorably, a *similarly-situated* younger employee.

Plaintiff alleges that he was *replaced* by a "younger, less experienced, and less tenured employee performing the same functions" as he did for Westinghouse. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment 2. But he uses the word "replaced" so loosely that only the most uncritical examination of the facts would support the allegation. Subsequent to the RIF, plaintiff's job ceased to exist. His alleged "replacement," Bruce Brosek (Brosek), began working at Westinghouse's Homewood Plant as a computer programming consultant in October, 1989, and was hired by Westinghouse on March 1, 1991 as a Senior Programmer. Brosek Deposition 12, 16. Plaintiff queries why his "skills, experience and abilities [were] listed as the partial reason for his termination when Mr. Robert DeGroot (DeGroot), one of the individuals who decided to implement the [RIF], denied that plaintiff's performance was a factor at all." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment 7. The answer is simple: plaintiff's "performance" was necessarily a matter of history, and of no relevance to the post-RIF operations. Plaintiff may have been a crack Senior Systems Information Analyst, indeed, nothing in the record suggests that he was not. But what Westinghouse needed, apparently, was not a systems analyst, but a computer programmer.[6] Brosek was and is a computer programmer. As

---

6. It was the plaintiff himself who hired Brosek to work for Westinghouse on a contract basis, thereby filling a need the defendant had at that time for "an excellent programmer at Homewood." Naas Deposition 157.

such, Brosek's position required different job skills than those Naas was using at the time of the RIF. *See Doby v. Jones & Laughlin Steel, Inc.,* 624 F.Supp. 874, 879 (W.D.Pa. 1985). If Naas' programming skills were sufficient to meet Westinghouse's needs, there would have been no need to hire Brosek in the first place.

■■■ Therefore, in order to meet the third prong of his prima facie case, the "qualification" that plaintiff is required to show must be with respect to his computer programming abilities. *Cf. Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1167 (8th Cir.1985). Besides self-serving declarations, plaintiff has not adduced any evidence that he could have done the programming work that defendant hired outside consultants to do during his tenure at Westinghouse. In fact, he acknowledges that Brosek was, and that he (Naas) was not, an "excellent" computer programmer. Naas Deposition 121, 139. Nevertheless, courts are constrained to accept a plaintiff's subjective belief regarding his own qualifications even in the absence of any objective, supporting evidence. *Jackson v. Univ. of Pittsburgh,* 826 F.2d 230, 236 (3d Cir.1987), *cert. denied* 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). Therefore, viewing all facts in the light most favorable to plaintiff, I conclude that plaintiff has met the third prong of his prima facie case.

Plaintiff's prima facie case falters at the fourth step. From October, 1989 to July, 1991, defendant's Homewood Plant was served by Naas as a systems analyst, and by Brosek as a computer programmer. Even accepting Naas' claim that he was a competent computer programmer, for him to prevail, the ADEA would have to be construed as a statutory "bumping" scheme favoring employees older than forty. Essentially, plaintiff's position amounts to the following: "Even though we had different jobs, Brosek and I were both qualified computer programmers, and I could have performed Brosek's programming duties if my superiors had made programming my priority rather than his. Therefore, when my systems analyst duties were extinguished in the plant-wide RIF, Westinghouse should have discharged Brosek, who is younger, in order to make

room for me, a member of the protected class, as the new computer programmer." Plaintiff's Brief In Opposition to Defendant's Motion for Summary Judgment 9–11.

Plaintiff fails at the fourth step of his prima facie case because he cannot show that he was "replaced" by Brosek or any other Westinghouse employee, or that he was entitled to "bump" any other (younger) employee out of a job for which he (Naas) was qualified. *Haimovitz v. U.S. Dept. of Justice,* 720 F.Supp. 516, 528 (W.D.Pa.1989), *aff'd* 902 F.2d 1560 (3d Cir.1990); *Just v. James River, II, Inc.,* 784 F.Supp. 1145, 1151 (D.Del. 1992) ("Clearly, when an employee's job is eliminated due to plant reorganization and another job is available for which that same employee is qualified, the company need not necessarily offer that job to the employee....").

For the aforementioned reasons, I do not believe that plaintiff has established a prima facie case of age discrimination. Nevertheless, because the parties have briefed the issue, and because the pretext stage of the *Burdine* test is the most disputed portion of the analysis, *see e.g., Healy v. New York Life Ins. Co.,* 860 F.2d at 1214 n. 1; *Carter v. Westinghouse Elec. Co.,* 703 F.Supp. 393, 394 (W.D.Pa.1988), *aff'd* 877 F.2d 53 (3d Cir. 1989), I turn to Westinghouse's articulated reasons for discharging the plaintiff, and Naas' evidence that those reasons were untruthful.

### B. *Legitimate, Nondiscriminatory Reason*

■■■ Westinghouse produced evidence, without contradiction, that from late–1990 through mid–1991, business at its Homewood Plant was down 30 to 40 percent, and that this was the cause of its RIF. DeGroot Deposition 17, 41; Gillgrist Deposition 4. Westinghouse asserts, without contradiction, that the RIF was not discriminatory in its purpose or effect. Nineteen of 64 employees, approximately 30 percent of the staff, were terminated. Of the 19 employees terminated, nine were under 40 years old, and 10 were members of the protected class. Of the 45 employees remaining after the RIF, 31 were over 40 years old. In fact, it appears that after the RIF, the mean age at the Homewood Plant increased. Memorandum

of Points and Authorities in Support of Defendant's Motion for Summary Judgment Against Plaintiff Paul L. Naas, Attachments B–1, B–2.

According to Westinghouse, plaintiff Naas was included within the plant-wide RIF because many of his duties were to be automated or rendered unnecessary. DeGroot Deposition 62–63; Defendant's Answer to Plaintiff's Interrogatory Nos. 5, 8. Robert DeGroot, Operations Manager of the Renewal Parts Division, and Robert Gillgrist (Gillgrist), Plant Manager, determined that Naas' position was not essential to the functions performed at the Homewood Plant, Gillgrist Deposition 5. Thus, defendant has articulated a legitimate, nondiscriminatory reason for its action with respect to Naas' termination.

### C. Evidence of Pretext

Because the defendant has carried its burden of production, the inference that would be raised by a prima facie case is rebutted, and plaintiff must now "demonstrate that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95. As discussed, *supra,* under *Chipollini,* ADEA plaintiffs need not adduce any proof whatsoever that the defendant's articulated reasons for its actions were a pretext *for age discrimination.* Nonetheless, even under *Chipollini,* plaintiffs must produce *evidence,* whether direct or indirect, that the defendant's articulated reasons are pretextual. As the Court of Appeals for the Third Circuit noted in *Billet v. Cigna Corp.,* 940 F.2d 812, 828 (3d Cir.1991), "despite the breadth of the language in *Chipollini,* discrimination cases are inherently fact bound. Accordingly, *Chipollini* does not stand for the proposition that an age discrimination case can never be taken from the jury." "A plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, this court will not interfere in an otherwise valid management decision. To require less would be to expose to litigation every management decision impacting on a protected party." *Id.*

The use of innuendo and insinuation to create a "metaphysical doubt," *see Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), as to the defendant's reasons do not constitute the indirect evidence contemplated by *Chipollini.* The plaintiff must adduce *facts* raising a genuine issue of pretext; speculation aided by one's own depositions and cryptic criticisms of the defendant's reasons will not suffice. *Turner v. Schering–Plough Corp.,* 901 F.2d 335, 344 (3d Cir.1990); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986). Otherwise, ADEA plaintiffs armed with no more than the evidentiary equivalent of a raised eyebrow could consistently reach a jury, contrary to the teaching of *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which encourage the use of summary judgment when the non-movant's position lacks a factual basis.

In the instant action, much of plaintiff's Brief In Opposition to Defendant's Motion for Summary Judgment consists of exactly the sort of innuendo that does not rise to the level of indirect evidence, and that is not effective to support his claims of pretext. Plaintiff states that "it is interesting to note" that Westinghouse hired the younger Brosek right in the midst of its business decline in early–1991. Plaintiff's Brief In Opposition to Defendant's Motion for Summary Judgment 4. Even though plaintiff does not dispute Westinghouse's business downturn, the lack of age-related motivation in the decision to implement a RIF, or the lack of disparate impact on the protected class, plaintiff attempts to raise a genuine issue of pretext by the insinuation that Westinghouse's business decline could not have been the reason for his termination if it was at that very time hiring another employee.

But Brosek's hiring may not have been unwise, given the defendant's need for an in-house computer programmer. In fact, it appears that Westinghouse hired Brosek precisely in order to cut costs by automating some functions that previously had been performed by salaried personnel. Hiring an

additional, cost-saving employee for those reasons would be good business judgment in the face of an economic downturn. In any event, Brosek's hiring was a business decision that the defendant was entitled to make. The fact that Westinghouse hired a computer programmer when it did, and that plaintiff considered it imprudent or threatening (since *his* salary was among the cost-savings realized by automation), does not in the least suggest that Westinghouse lied about its reasons for terminating Naas.

Plaintiff challenges Westinghouse's articulated reasons by pointing out that: (1) his alleged "replacement," Bruce Brosek, has "conceded" that his knowledge and experience were not equal to Naas'; (2) Plant Manager Robert Gillgrist acknowledges that Naas was the oldest and had more seniority than any employee in his group; and (3) Naas' supervisors were not aware of his programming expertise.

First, Brosek's "concession" came in the context of a discussion of his ability to maintain files on the computer system used at the Homewood Plant. He merely agreed that his knowledge and experience were "not equal," not necessarily *inferior*, to plaintiff's knowledge and experience. More importantly, the relevant question from a business perspective was whether Brosek or Naas had more knowledge and experience *with respect to computer programming*.

Naas obviously disagreed with his supervisors' opinions on that matter, and suggests they should have asked him directly about his programming abilities. In fact, Naas did not even think "there was a need for the Homewood Plant to consider hiring a contract programmer on a permanent basis." Plaintiff's Brief In Opposition to Defendant's Motion for Summary Judgment 8. Plaintiff also finds it "curious" that Plant Manager Robert Gillgrist did not consult Naas' supervisor, Mr. Anthony Asquino, regarding Naas' programming abilities (although plaintiff's assertion is contradicted by the deposition of Gillgrist),[7] and that Gillgrist never asked Naas about his "goals and objectives." View-

ing these criticisms in the light most favorable to plaintiff, the only inference they permit is that Westinghouse relied on its supervisory personnel's less than fully informed judgment; they do not constitute evidence that Westinghouse terminated Naas for some reason other than that which it articulated. Naas has not shown or even suggested that Westinghouse's actions were a material departure from an established company policy. Absent direct or indirect evidence suggesting pretext, the ADEA does not protect class-member employees who simply disagree with the business decisions of, or feel insufficiently appreciated by, their employers. *Thornbrough v. Columbus and Greenville R. Co.,* 760 F.2d 633, 647 (5th Cir.1985).

That Plant Manager Robert Gillgrist was aware of plaintiff's age and seniority is unremarkable. Plaintiff has not linked that fact to any other evidence showing even circumstantially that Westinghouse executed its RIF as a pretext for discharging Paul Naas. *See Tozzi v. Union R. Co.,* 722 F.Supp. 1236, 1239 (W.D.Pa.1989).

In summary, plaintiff Naas has not shown that he was replaced by a younger employee, nor has he adduced specific evidence that either directly points to age discrimination, or circumstantially casts doubt on the veracity of the defendant's articulated reasons for its inclusion of Paul Naas in the 1991 RIF. Summary judgment is entered for the defendant.

---

**7.** When asked whether during discussions with Naas' immediate supervisor, Anthony Asquino, he and Mr. Asquino "discuss[ed] in any way Mr. Naas' programming skills and abilities," Gillgrist responded: "The answer to that question is yes." Gillgrist Deposition 70.