James J. McGOUGH and Robert J. Wolfe, Plaintiffs,

v.

**BETHENERGY MINES, INC., et al., Defendants.**

Civ. A. Nos. 92–22J, 92–364J.

United States District Court, W.D. Pennsylvania.

Sept. 27, 1993.

### OPINION AND ORDER

D. BROOKS SMITH, District Judge.

These matters are before the Court on defendant Bethenergy Mines, Inc.'s (Bethenergy) motion for summary judgment. docket no. 25 at C.A. No. 92–22J. As originally filed, plaintiffs James L. McGough (McGough) and Robert J. Wolfe (Wolfe) submitted separate complaints, at C.A. No. 92–22J and C.A. No. 92–364J respectively, asserting causes of action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* the parallel Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.,* the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.,* and common law theories, against their former employer Bethenergy and several other related entities. Because the matters presented identical legal issues and substantially the same factual issues the two actions were consolidated. During the course of pretrial proceedings, the claims other than age discrimination under ADEA, and defendants other than Bethenergy, were dismissed from the litigation, docket nos. 14, 34, 35. The sole question presented by defendant's motion for summary judgment is whether plaintiffs have shown that there is a disputed issue of fact concerning defendant's asserted reason for discharging them.

## I.

I have recently described the legal framework for analyzing ADEA claims at the summary judgment stage in *Naas v. Westinghouse Electric Corp.*, 818 F.Supp. 874, 876–77 (W.D.Pa.1993):

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment "... if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." "[T]he requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue of fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2414–15; *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987). The presence or absence of any plausible motive to engage in conduct is relevant to whether a genuine issue of fact exists within the meaning of Rule 56(e). *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 597, 106 S.Ct. 1348, 1361–62, 89 L.Ed.2d 538 (1986).

Once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories and admissions on file, in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark, supra* at 144.

\*  \*  \*  \*  \*  \*

The ADEA proscribes employers from failing to hire, discharging, or "otherwise discriminat[ing] against any individual ... because of such individual's age," 29 U.S.C. § 623(1) so long as he or she is within the statutorily protected class of individuals who are at least 40 years of age. 29 U.S.C. § 631(a). To prevail in a disparate treatment action, an ADEA "plaintiff must prove by a preponderance of the evidence that age was a determinative factor in the employer's decision." *Billett v. Cigna Corp.*, 940 F.2d 812, 816 (3d Cir.1991) (citation omitted). In theory, this ultimate burden of proving intentional age discrimination remains with the plaintiff at all times. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1903–94, 67 L.Ed.2d 207 (1981); *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1395 (3d Cir.1984), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

Under the familiar burden-shifting rules of proof established by courts "to ease the evidentiary burdens on employment discrimination plaintiffs," *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 638 (5th Cir.1985), the plaintiff must first demonstrate what has been termed a "prima facie case." This means that in a reduction in force case, such as the instant action, the plaintiff must show that he (1) is a member of the protected class, (2) was discharged from a job (3) for which he was qualified, and (4) was replaced by or treated less favorably than another employee not in the protected class. *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir.1983), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Once established, the plaintiff's prima facie case raises an inference of intentional discrimination by the defendant. *Furnco v. Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). However, if the plaintiff fails "to limn a prima facie case, the inference of discrimination never arises, and the employer's motion for summary judgment will

be granted." *Dodge v. Susquehanna Univ.*, 785 F.Supp. 502, 505 (M.D.Pa.1992) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir.1991), *cert. denied,* [——] U.S. [——], 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)).

If the plaintiff establishes a prima facie case of age discrimination, the defendant then has the burden of producing evidence tending to prove that its action was motivated by some "legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. If the defendant can articulate a nondiscriminatory reason, "the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* at 255, 101 S.Ct. at 1094–95.

In order to avoid summary judgment, the plaintiff must establish "by competent evidence," *Ezold v. Wolff [Wolf], Block, Schorr and Solis–Cohen*, 983 F.2d 509 (3d Cir.1992), "that the employer's proffered explanation is subject to factual dispute." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff may do so "by means of indirect proof that the employer's reasons are pretextual *without presenting evidence specifically relating to age.*" *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898 (3d Cir.) (emphasis added), *cert. dismissed* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

(footnotes omitted)

As the Supreme Court has recently clarified in *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), plaintiff must under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden-shifting scheme raise a question of fact that the pretextual reasons were in fact a coverup for an illegally discriminatory decision. *St. Mary's Honor Center*, —— U.S. at ——, 113 S.Ct. at 2752, 125 L.Ed.2d at 423, *quoting McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825. The cases in this circuit to the contrary, *see Naas*, 818 F.Supp. at 877–78, are thereby implicitly overruled. Even prior to *St. Mary's Honor Center*, however, plaintiff was required at the analysis of pretext stage to do more than raise a quibble over the procedural regularity of the defendant's actions. *Dolence v. U.S. National Bank*, 797 F.Supp. 423 (W.D.Pa.), *aff'd w/o op.*, 975 F.2d 1549 (3d Cir.1992).

## II.

In these matters, Bethenergy has conceded that Wolfe and McGough were qualified for the jobs from which they were discharged and have satisfactorily established a prima facie case by showing that some persons younger than them were retained. Bethenergy's Brief at 21. It is also not disputed that Bethenergy has asserted a legitimate basis for the discharge of Wolfe and McGough. It is necessary therefore to determine whether there is a basis for a finding by a reasonable jury that Bethenergy's reduction in force was a pretext for discrimination against plaintiffs.

James McGough was born on October 29, 1945, and began working for Bethenergy on October 22, 1970. Robert Wolfe was born on February 13, 1944, and began working for Bethenergy on March 4, 1970. McGough was laid off on October 23, 1990, at age 44. Wolfe was laid off on December 23, 1990, at age 46. Both plaintiffs had worked for Bethenergy for twenty years, at first as members of the United Mine Workers covered by the National Bituminous Coal Wage Agreement. Both had moved to salaried non-union jobs and occupied the position of Section Foreman at the time of their layoffs.

Bethenergy currently maintains only one local mine, Mine 33, and one coal preparation plant in Ebensburg, Cambria County. Mine 33 operated in two "seams," the "B Seam" and the "C–Prime Seam," which are separate underground production areas with separate work crews and supervisory personnel. In August, 1990, Bethenergy announced that it would curtail production at Mine 33, resulting in the elimination of both hourly union and nonunion section foreman positions.

In preparation for the layoff of foremen, Richard Stickler, the mine manager of Mine 33, requested the superintendents of each seam, shift foremen, and general mine foremen to rank all section foremen, taking into account overall performance, considering

such things as production, safety, compliance with laws, and company regulations, as well as other performance factors. (Stickler Dep. Ex. 2; Stickler Affidavit ¶ 4, 5; Dubreucq Dep. at p. 12; Merritts Affidavit ¶ 3, 4). Some of those factors, such as initiative and leadership, were also factors reflected in Bethenergy's annual performance appraisals. *See* Plaintiffs' Exh. 5.

Peter Merritts, the B Seam Superintendent, and Robert Dubreucq, the C Prime Seam Superintendent, carried out Stickler's request to rank the foremen as follows: the section foremen in each seam were ranked by their superintendent, their shift foreman and their general foreman. Each assigned the number 1 to the section foreman whom they would retain if they could only retain one foreman, number 2 to the person they would retain if they could keep only one additional foreman, and so on, until each foreman was ranked. (Stickler Dep. at p. 21, 72–73, 75, 81; Merritts Dep. at p. 27, 32–33, 37, 41; Dubreucq Dep. at p. 13–14, 17, 24, 26, 30–31.) The rankers were told not to confer with one another while ranking their subordinates. (Stickler Dep. at p. 82–83; Dubreucq Dep. at p. 30–31; Radebach Dep. at p. 53.)

Additionally, the mine engineer also ranked the B seam foremen on the basis of each foreman's most recent score on the Company's Performance Management System, which was a numerical measurement of a foreman's performance against certain goals in various areas, such as production and safety. (Merritts Dep. at p. 47–48.)

Merritts and Dubreucq prepared an overall ranking for their respective seams by totalling the numbers for each foreman and arranging them in order of lowest to highest. (Merritts Affidavit ¶ 7; DuBreucq Affidavit ¶ 8.) Merritts and Dubreucq then separately performed an overall ranking, dovetailing the results of each seam. The person deemed better would be given the number 1 ranking. (Dubreucq Dep. at p. 36–37.) During this combined ranking, the rankers did not change the results of the prior individual seam rankings. (Debreucq Affidavit ¶ 9; Merritts Affidavit ¶ 8.) The superintendents continued down the list until they each had developed a combined overall ranking of the foremen from both seams. (DuBreucq Dep. at p. 36–37; Merritts Affidavit ¶ 9.)

Finally, Merritts and Dubreucq mathematically tallied their separate overall rankings into one final combined overall ranking. In cases of a tie, length of service was deemed the determining factor. (Dubreucq Affidavit ¶ 10; Merritts Affidavit ¶ 9.) McGough was ranked 49th out of 56 foremen; Wolfe was 42nd. (*See* Stickler Affidavit ¶ 7 & Ex. A.)

On September 30, 1990, Stickler's plan was to retain 40 foremen and lay off those ranked 41 and higher. (Stickler Affidavit ¶ 9.) However, because two of the foremen who were ranked in the top 40 were out on long-term absences, both the foreman who ranked 41, as well as Wolfe, were retained.[1] (Stickler Affidavit ¶ 10.)

On December 23, 1990, Wolfe was laid off when the next 14 foremen from the original ranking were laid off. (Stickler Affidavit ¶¶ 14–15.)

Plaintiffs acknowledge that they have no facts or evidence that either their rankings or their layoffs were based on consideration of age, except for their own subjective beliefs and the beliefs of employees with whom they had worked that they were better foremen than some of the younger foremen retained. As plaintiff Wolfe stated in his deposition:

Q. What facts or evidence do you have to prove that age played a role in your selection for layoff?

A. Just—I have my feelings.

Q. Your feelings?

A. That I know that I should have stayed, correct. I gave that company the best years of my life and I also have some other people that agree with me ...

\* \* \* \* \* \*

1. Although McGough was among those foremen scheduled to be laid off on September 30, 1990, the Company extended McGough's employment to October 23, 1990, to permit McGough to complete 20 years of service to qualify for a Rule of 65 pension. Had McGough been laid off at the time when the others in this group were laid off, he would have had only a deferred vested pension, payable beginning at age 62. (Stickler Affidavit ¶ 12–13.)

Q. What would [the witness] testify to prove that age played a role in your layoff?

A. Well, they feel the same way, that I was—as far as being a good foreman,' I was a good foreman. [ ...]

Q. So, these people that you will identify will testify that you were a good foreman?

A. Yes, they will. And that they think that there was some discrimination involved too, age discrimination.

\* \* \* \* \* \*

Q. Do you know if any of these people have any evidence of age discrimination other than the fact that they thought you were a good worker?

A. Well, they know too that there were a lot younger people retained age-wise, service-wise.

Q. Have any of them ever told you that they heard anything that—or had any first-hand knowledge that age played a role in your layoff?

A. No, not first-hand knowledge.

\* \* \* \* \* \*

Q. I take it then, what you're saying is that you feel that you were discriminated against because the Company retained younger, less qualified workers. Is that right?

A. Right.

\* \* \* \* \* \*

Q. So they should have discriminated in favor of the older guys?

A. No, I didn't say that. I said there should have been more consideration given. Well, the young people, you know, they sat there and nod their head yes. When you had been around the mines 23 and half, 24 years, which I was at this time, you tend to disagree with some of their things. I mean you can't brainwash me. You can't tell me one thing. If I know it's wrong, I'm not going to sit there and go like this (nodding head).

So the younger people were easier to sway their way whatever they said. And a lot of these people, it is my feeling that they kissed up to the company constantly. And I'm sure my witnesses will come up with a little bit to—on that.

Q. So you felt that they kept—

A. I mean if you went hunting with the right guy or fishing with the right guy or brought him in a slab of bacon or this or that, it seemed like you were in pretty good shape.

Q. So you felt the people they retained were people who kissed up to higher management.

A. Yes.

(Wolfe Dep. at 56–61.)[2]

Plaintiff McGough's deposition was similar:

Q. Now, you go on to allege in this complaint specifically at paragraph 34 that you were terminated on October 23, 1990 because of your age?

A. Yes.

Q. Why do you think it was because of your age?

A. Because everything else about my record was perfect. I couldn't see anything else they could lay me off for. My production, my attendance, everything was— there was no other reason.

\* \* \* \* \* \*

Q. Are you claiming that the Company had no basis for laying anybody off at that time?

A. No. I'm saying that they didn't have a basis for laying me off.

Q. So you're not saying that the Company just engaged in layoffs at the time just to get rid of older people, but you were selected because of your age?

A. Yes.

Q. Again, I'm asking you, aside from your feeling that you were more qualified than some of the people that were retained who were younger, do you have any facts or other evidence that would indicate that age played a role in their decision to lay you off?

A. Well, I have people that—union people who worked for me and they know what

---

**2.** Page 61 of Wolfe's deposition is missing from the copy submitted by Bethenergy. Plaintiffs do not dispute the accuracy of the quote contained in Bethenergy's Brief, docket no. 26, at 12.

my qualifications are, what my production and everything was. They could say that—come forth and say that age was the main factor.

\* \* \* \* \* \*

Q. Have they ever told you (referring to his union hourly employees) that they knew of any facts or evidence that would indicate that age played a role in the decision to terminate you?

A. Yes. They told me that they thought age would mean a lot, meant a lot about why I got laid off, they would swear to that.

Q. They would swear that they thought that. But I'm asking whether they told you that somebody told them that whether they had seen some document that indicated that or—

A. No. I don't think they've seen anything.

Q. So, they haven't given you any specific information. They have just told you that that's what happened.

A. Right. That was their opinion.

\* \* \* \* \* \*

Q. At any time did anyone ever tell you that—aside from the personal opinion, that anybody ever tell you that they knew or could prove that age played a role in your layoff?

A. Nobody told me, no.

\* \* \* \* \* \*

Q. Now, what I'm asking you is do you have any facts or evidence other than your feeling, do you have any facts or evidence, to prove that the Company did not in fact perform the layoff as it said it did?

A. Well, I think I have the union people that worked under me. If they seen that, they would laugh at it.

Q. So they would disagree with the results?

A. Sure they would.

Q. But do you have any facts or evidence that would indicate that in fact that wasn't

the way the Company went about deciding who was going to be laid off?

A. I have no proof.

(McGough Dep. at 7–10, 12, 14–15)

Plaintiffs' pretrial stipulations likewise rely heavily on the existence of subjective testimony that age "must have been" a factor. *See* Wolfe Pretrial Stipulation, Section VIII, ¶¶ 11–18 (docket no. 28); McGough Pretrial Stipulation, Section VIII, ¶¶ 11–18 (docket no. 30). Plaintiffs present no direct evidence of age discrimination.[3]

Plaintiffs' counsel argues, in what I consider to be a mischaracterization of the record, that "[p]laintiff has presented testimony from Peter Merritts which indicates that Mr. Merritts, as (sic) least, felt that age was directly related to a slow-down in performance." Plaintiffs' Brief at 21, 26. The actual exchange at Merritts' deposition reads as follows:

Q. Did you notice in your career as time went on, I'm asking you in general how about Bob Wolfe, first. Just generally did you notice that as your colleagues got older they got slower?

A. I wouldn't say that about everybody, no.

(Merritts Dep., 52). Not only does Merritts not state that he feels age is directly related to a slow-down in performance, he disagrees with that general proposition as it is advanced by plaintiffs' counsel.

Plaintiffs attempt to derive an indirect inference of discrimination from inconsistencies in the factors used and alleged to have been used by Bethenergy to rank section foremen. Plaintiffs' Brief 20, 25. Plaintiffs allege that individuals did not, when they performed their evaluations "refer to any type of documentation or data regarding production safety or compliance with laws," or use the annual performance appraisals. *Id.* Bethenergy does not dispute that there are inconsistencies. Merritts, for instance, testified that he had seen the foremen's performance apprais-

---

**3.** The record contains allegations that six of the forty section foremen retained were significantly younger than plaintiffs (Scott, George, Korber, Puch, Sposito, Saylor). The record does not contain any information concerning the ages of the other laid off employees. This hardly indicates a systematic effort to purge older employees in favor of younger ones.

als and referred to them as needed. (Merritts Dep. at 36). DuBreucq, by contrast, testified that he did not refer to them in ranking foremen from his seam.[4] DuBreucq Dep. at 40.)

In either case, however, a lapse from procedural symmetry, like any other minor irregularity in a defendant's evaluation procedures, *Dolence,* 797 F.Supp. at 427, does not by itself permit an inference of age discrimination. It may even be, as plaintiffs and plaintiffs' counsel suggest, *see* Merritts Dep. at 33, that Bethenergy retained employees based on factors as amorphous as popularity rather than based on a perfectly quantifiable measurement scale. But both before and after *St. Mary's Honor Center,* it is clear that there must be a reasonable inference that the employer's methods were flawed because they were merely a pretext for age discrimination. Plaintiffs have not done that here. Since the ADEA is concerned only with eliminating age discrimination, and was not passed to alter conditions of employment generally, see *Dolence,* 797 F.Supp. 426 n. 5, defendant's motion for summary judgment must be granted.

---

**4.** Bethenergy contends without contradiction that the performance appraisals were not relative rankings, but were meant to be used to coach an employee in areas where he showed weaknesses. (Stickler Dep. at 39–40.)