Schree HICKS, Angelique Giddings,
Sandra White and Willie Mae
Lewis

v.

Robert ARTHUR, Marsha O'Hara, Robert
Fishman and Resources for Human
Development.

Civ. A. No. 93–3160.

United States District Court,
E.D. Pennsylvania.

March 7, 1995.

Don Bailey, Harrisburg, PA, for plaintiffs.

Joan R. Sheak, Klehr, Harrison, Harvey, Branzburg & Ellers, Bethlehem, PA, for defendants.

## MEMORANDUM

JOYNER, District Judge.

Today we decide Defendants' Motion for Summary Judgment. The facts of this case are somewhat confusing to relate, due to the fact that each Plaintiff's cause of action for race discrimination under 42 U.S.C. § 1981 (1994) is against different Defendants and stem from different events, each taking place at a different time. In addition, one Plaintiff also brings a sex discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994). In the interest of clarity, we will first state the general caselaw applicable to this action, and then examine each Plaintiff's claim or claims separately.

### CASELAW APPLICABLE TO § 1981 AND TITLE VII CLAIMS

Plaintiffs' claims arise under both Title VII and 42 U.S.C. § 1981. § 1981 reads:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Title VII's § 2000e–2(a)(1) states:

It shall be an unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

The legal elements of these causes of action are the same. *O'Brien v. City of Philadel-*

*phia*, 837 F.Supp. 692, 699 (E.D.Pa.1993). A plaintiff can show a Title VII violation under either a disparate impact or disparate treatment theory. *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir.1990). A § 1981 claim can only be brought under a disparate treatment theory. *Croker v. Boeing Corp.*, 662 F.2d 975, 989 (3d Cir.1981).

All Plaintiffs here make a disparate treatment argument. To move beyond a summary judgment motion, they must first make a prima facie case of discrimination. *Metal Serv.*, 892 F.2d at 347. To make a prima facie case, each Plaintiff must show that:

1) she is a member of a protected class

2) she was qualified for her position

3) despite these qualifications, she was terminated from her position, and

4) she was replaced by someone not in a protected class or someone in a non-protected class, otherwise similarly situated, was treated more favorably.

*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 1824 & n. 13, 36 L.Ed.2d 668 (1973). The prima facie case is not intended to be rigidly applied or difficult to show. *Metal Serv.*, 892 F.2d at 347.[1]

Once a prima facie case is made, the burden of production switches to Defendants to assert legitimate, non-discriminatory reasons for the allegedly discriminatory actions. *Id.* If Defendants can make that showing, the burden of production switches back to Plaintiffs to rebut the Defendants' proffered legitimate reasons by a preponderance of the evidence. *Id.* This can be done either by showing that each reason is a recent fabrication or that discrimination is more likely than not a motivating or determinative cause for the actions. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637–38 (3d Cir.1993).

At the summary judgment stage, a plaintiff can produce evidence that either makes us disbelieve the defendant's proffered reasons or that indicates that discrimination was more likely than not a motivating or determi-

---

1. In this case, each plaintiff is African American, which places them in a protected class. There-

fore, each Plaintiff has met the first element of her prima facie case.

native cause of the termination, possibly by showing such implausibilities and inconsistencies that make the proffered reasons unbelievable.

A plaintiff "need not prove at th[e summary judgment] stage that the employer's purported reason for its actions was false, but the plaintiff must criticize it effectively enough so as to raise a doubt as to whether it was the true reason for the action." *Solt v. Alpo Pet Foods, Inc.*, 837 F.Supp. 681, 684 (E.D.Pa.1993) (citing *Naas v. Westinghouse Elec. Corp.*, 818 F.Supp. 874, 877 (W.D.Pa. 1993)). However, "an ill-informed decision or an ill-considered decision is not automatically pretextual if the employer gave an honest explanation for termination." *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1304 (7th Cir.1991).

The Third Circuit has held that "factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." *Josey*, 996 F.2d at 638–39 (defendant cited economic considerations to explain plaintiff's termination but replaced plaintiff with Caucasian employee at higher wage). Accordingly, summary judgment was not granted when an African American plaintiff showed that Caucasian employees were not required to submit medical records for absences or return travel advances in cash, yet he was. The Third Circuit held that this disparate employer treatment helped make a showing of pretext. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 799 (3d Cir.1990).

### COUNT ONE—SCHREE HICKS

Plaintiff Schree Hicks has sued Resources for Human Development (RHD) and two of its managers, Marsha O'Hara and Robert Fishman on two grounds.[2] She alleges violations of the 1st, 5th, 13th and 14th Amendments of the United States Constitution pursuant to § 1981. First, she alleges that in late 1991 she applied for a promotion from Unit Director to Associate Director. She asserts that she was qualified for the position, but was denied it on the basis of her race. The position was instead given to Sharon Kauffman, who is Caucasian. Second, a year after being denied the promotion, Hicks was terminated, allegedly for poor treatment of subordinates. Her replacement was an African American man. Hicks's Amended Complaint, however, alleges that non-African American employees were treated differently than she was, and that the termination was on account of her race. Defendants have moved for summary judgment against Hicks. They assert that she cannot make out a prima facie case of race discrimination either for failing to promote or for terminating her.

### A. Failure to Promote

Because Hicks was not promoted, while a Caucasian woman was, Hicks can show the final element of her prima facie case.[3] However, Defendants argue that Hicks cannot show that she was qualified for the position for which she applied. RHD offers deposition testimony of both Kauffman and Hicks to support their assertion that Kauffman was much more qualified than Hicks was. Kauffman had both a bachelor's degree in social work and a master's degree in health administration whereas Hicks had only completed her high school education at the time, although she was working on a joint bachelor's and master's degree in human services. In addition, Kauffman had been at RHD eight years longer than Hicks, and had been head of a program for six years more than Hicks had been head of a program. RHD also provides deposition testimony that indicates that Hicks's employment in general was in jeopardy at the time she requested the promotion because of allegedly abusive treatment of her employees.

Hicks argues that the qualifications for the job she applied for are unknown, and that "employment decisions are based [sic] whimsical desires of the individual or the management group that has been selected to hire for that particular position." Brief in Opp. at 3.

---

**2.** Count One also includes assertions of discrimination because Hicks is a woman and a lesbian. These allegations are irrelevant to this race case.

**3.** For the purposes of this Motion only, Defendants concede that Hicks applied for and was denied the promotion.

The Brief concludes, "Hicks has substantially more practical experience than Sharon Kauffman and should have received the promotion that Ms. Kauffman received." *Id.* at 4–5. To support this contention, Hicks has supplied this Court with a copy of her resume. Taking Hicks's facts as true, for the purposes of this Motion we find that Hicks's practical experience made her qualified for the job; therefore, she has made a prima facie case of race discrimination for failing to promote her.

Accordingly, the burden moves to Defendants to show legitimate, non-discriminatory reasons for not promoting Hicks. The reasons they provide are that Kauffman was more qualified than Hicks for the position and that Hicks's tenure with RHD in general was in doubt at that point because there were serious concerns about the way she ran her programs. We find that these are legitimate, non-discriminatory reasons for failing to promote Hicks.

The burden now returns to Hicks to show pretext or other evidence indicating that these reasons are recent fabrications. She must rebut RHD's deposition testimony with affidavits or depositions of her own. Fed. R.Civ.P. 56(e). At the summary judgment stage, she need not prove that "the employer's purported reasons for its actions were false, but the plaintiff must criticize it effectively enough so as to raise a doubt as to whether it was the true reason for the action." *Solt,* 837 F.Supp. at 684 (citing *Naas,* 818 F.Supp. at 877). On a motion for summary judgment, we do not determine whether the employer acted wisely in choosing to hire or fire. *Fuentes v. Perskie,* 32 F.3d 759, 756 (3d Cir.1994). We look only to whether the employer "bore a discriminatory animus against the employee and [whether] this animus manifested itself in some challenged action, whether it be dismissal, failure to promote or failure to hire." *O'Brien,* 837 F.Supp. at 698.

We find that neither Hicks's resume nor her deposition demonstrate a discriminatory animus with "weaknesses, implausibilities, in-

consistencies, incoherencies, or contradictions." *Fuentes,* 32 F.3d at 765. She has not, therefore, rebutted Defendants' proffered legitimate reasons for not promoting her. Accordingly, her claim on this issue must fail.

**B. Termination**

■ Defendants assert and Hicks concedes that her replacement is also African American, which means that in order to make a prima facie case on her termination claim, she must show that people in non-protected classes, similarly situated, were treated differently.[4] *McDonnell Douglas,* 411 U.S. at 802 & n. 13, 93 S.Ct. at 1824 & n. 13. However, Hicks makes *no* attempt to show that she was treated differently than other employees in non-protected classes.

The sole piece of evidence Hicks has presented to this Court on this point is her deposition. In her deposition, Hicks makes numerous assertions regarding the alleged racism of one supervisor. This evidence is insufficient to show a prima facie case, although it could be relevant to show pretext. Similarly, Hicks's legal argument regarding her termination is limited to rebutting RHD's reasons for firing her. She in no way argues that she can make a prima facie case. Brief in Opp. at 6–10.

We cannot but find, based on this record, that Hicks has failed to make a prima facie case regarding her termination because she has failed to present any evidence as to disparate treatment. Because Hicks has not rebutted Defendants' legitimate reasons for not promoting her and because Hicks has not made a prima facie case of race discrimination for terminating her, we GRANT Defendants' Motion for Summary Judgment on Count I.

**COUNT TWO—ANGELIQUE GIDDINGS**

■ Angelique Giddings has sued RHD and Robert Arthur for race discrimination under the 1st, 5th, 13th and 14th Amendments pursuant to § 1981. In the Amended Complaint, she alleges that Defendants "concocted a false story of alleged misconduct . . .

---

4. For the purposes of this Motion only, Defendants concede that Hicks was qualified for the position and was fired.

in order to create an excuse to fire her." ¶ 39.

Defendants seek summary judgment on this claim.[5] They argue that Giddings cannot make out a prima facie case because (1) she was replaced by someone in the same protected class as herself and (2) because Giddings conceded in her deposition that she was fired for taking food stamps from an RHD client, and also because an office romance allegedly created an amount of controversy at the office. Giddings conceded in her deposition that she had "no other facts" than the ones just given to support her race discrimination claim. Defendants assert that those facts do not create a prima facie case of race discrimination.[6]

In response to Defendants' arguments, Giddings's counsel asserts that Giddings:

> faces the common problem of transference.... Angelique has not yet come to terms with the discrimination which she suffered. It is difficult for her to externalize the idea that she was discriminated against because of her race. As a proud young woman, Angelique attempts to find a substitute rationale for her firing. As a result of that inability to externalize the true reasons for her firing, *Angelique has failed to fully describe a prima facie case.*

Brief in Opp. at 10–11. Next, Giddings argues:

> • Both the plaintiffs and defendants are aware of the fact that Gerald Poole has information that would provide evidence forming a prima facie case of racial discrimination. Mr. Poole is the father of Angelique's child and also an employee of Resources. Angelique expressed that she believed she was fired because she was having a relationship with Gerald Poole. Ms. Giddings [sic] testimony ended there *but she knew more than she had told the defendants.* In fact, Angelique knew that

Resources personnel had told Mr. Poole that Angelique was fired because of being pregnant and due to her race. The plaintiffs attempted to illicite [sic] that information for the record through depositions but the defendants refused to produce Mr. Poole claiming he had no relevant information to add to Ms. Giddings' case.

> The Defendants' unwillingness to provide the plaintiff with Mr. Poole for deposition has led to Angelique's inability to corroborate the racially motivated pretext she has experienced. *The plaintiff would clearly be able to prove that race motivated her termination if Mr. Poole were made available for deposition.*

*Id.*[7] (emphasis added).

It does not appear to this Court that Giddings has ever subpoenaed or even noticed Mr. Poole's deposition. *See* Letter from Joan R. Sheak to Don Bailey of 11/30/94, at 2–3. This Court has certainly never received a Motion to Compel Mr. Poole's deposition. In the face of this laxity, Giddings cannot seek relief from the normal summary judgment standards by arguing that evidence she may receive in the future should rebut a summary judgment motion today. Fed. R.Civ.P. 56(e).

Rule 56(e) states that an "adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." (emphasis added). Although Giddings' Amended Complaint adequately states a claim for which relief may be granted, it is now time for that claim to be supported by "specific facts." Defendants argue, and Giddings concedes that she has not made out a prima facie case. Because Giddings has not even attempted to show any specific facts

---

5. For the purposes of this Motion only, Defendants concede that Giddings was qualified for the position and was fired.

6. Defendants conclude their argument by stating, "[w]hether Ms. Giddings did in fact take the food stamps is immaterial; the only material inquiry is whether Resources fired Ms. Giddings for do-

ing so." Brief at 30. We disagree with this statement. If, as Giddings alleges in her Amended Complaint, Defendants created the story in order to have an excuse to fire her on account of her race, this would be material.

7. These two quotes from Giddings's Brief constitute virtually the entire argument on her behalf.

with which to establish her prima facie case,[8] we GRANT Defendants' Motion for Summary Judgment on Count II.

### COUNT III—SANDRA WHITE

■ Sandra White has sued RHD only under the 1st, 5th, 13th and 14th Amendments, pursuant to § 1981 and Title VII. She alleges that RHD discriminated against her on the basis of her race and her sex. In February, 1992, White's supervisor, Cheryl Moyer, conducted a surprise inspection of the site for which White was Site Supervisor.[9] All parties agree that the inspection revealed 48 violations, and White was given one week to remedy them. White did not remedy them, and all parties agree that as a result, White was demoted to the position of Lead Resident Advisor at a different site. There is a dispute as to whether White was first fired, then rehired for the lower position, or simply demoted to that position. The Amended Complaint alleges that this was an "undeserved demotion, [followed by] a termination, and the humiliation of being assigned her daily supervisor tasks by someone less qualified (serving in violation of state regulations) all because Sandra White was a pregnant Black female." Amended Complaint ¶ 47. The person hired to replace White as Site Supervisor is an African American man. Because of her seniority with RHD, White's salary and benefits remained the same after the demotion. Defendant has moved for summary judgment on this Count on the basis that White cannot make out a prima facie case of either race or sex discrimination.

White's Brief in Opposition provides three explanations for White's termination, none of which base the termination on race or sex. First, her Brief states, "[t]he surprise inspection revealed numerous violations and led to concerns regarding Sandra's job performance. *As a result of that concern* Sandra

was demoted." Brief in Opp. at 12 (emphasis added).

Second, the Brief explains that after the inspection, Moyer gave White the option to be demoted, start a new program or be fired. Given these options, White decided to file a grievance with RHD instead. The Brief concludes "[i]t appears from the record that *Ms. White was terminated for filing a grievance.*" *Id.* at 13 (emphasis added).

Finally, the Brief asserts that, "the plaintiff firmly believes *her termination was due to the fact that Ms. Moyer disliked Sandra White.*" *Id.* at 14 (emphasis added).

None of these assertions serves to establish a prima facie case of race or sex discrimination—indeed, they do exactly the opposite. White, however, has also filed an affidavit from Robin Tomosky, a Caucasian Assistant Director at RHD in support of her claims. Unlike the apparent concessions in the Brief, the affidavit does support claims of both race and sex discrimination.

To support White's race claim, Tomosky gives "examples [sic] events which occurred because of Sandra being black:

a. Direct orders from Cheryl Moyer to intentionally harass Sandra White

b. Resources' complete lack of support for Sandra White during her pregnancy while other white employees, including myself, were supported in the pursuit of starting and growing a family."

Taking Plaintiff's version of the facts as true, we find that this affidavit is sufficient to show that other employees in non-protected classes (such as Tomosky), similarly situated, were treated more favorably than White was. Because White provides specific facts to support her assertion that she was treated less favorably than other, similarly situated, employees, we find that White has made a prima facie case of race discrimination.[10]

---

8. Counsel's assertion that Giddings "knew more than she had told the defendants" does not rise to the level of specific facts.

9. White does not raise any complaint about the surprise aspect of the inspection.

10. Defendant cites *Kuhn v. Philip Morris U.S.A.,* 814 F.Supp. 450 (E.D.Pa.), *aff'd,* 16 F.3d 404 (3d Cir.1993) for the proposition that a "claim fails at the very outset" if the plaintiff is replaced by a person in the same protected class as herself. *Id.* at 453. However, *Metal Service* reminds us that the "prima facie test should not be viewed as a rigid formula." 892 F.2d at 347 (citing cases).

To support White's sex claim, Tomosky's affidavit avers: "examples of sex discrimination include: a. Due to Sandy's being a pregnant black woman, Cheryl Moyer offered the position of Site Supervisor to Bruce King prior to Sandy's demotion." The affidavit further opines that "it is my belief that Sandra White was terminated for being a pregnant female." Taking these facts as true, we find that White has shown that she was replaced by a man, and has, therefore, made out a prima facie case of sex discrimination.

Because White has made prima facie cases of both race and sex discrimination, the burden of production switches to the Defendant to assert legitimate, non-discriminatory reasons for its actions. *Metal Serv.*, 892 F.2d at 347. RHD argues that it legitimately demoted White for poor work performance, culminating in a surprise inspection that revealed 48 violations. White was given one week to fix the problems, but did not, so she was demoted. It supports this explanation with affidavit testimony by Moyer.

Pursuant to Rule 56(e), because affidavits are used to support RHD's case, White can rebut only with affidavits, depositions or answers to interrogatories. At the summary judgment stage, White need not prove that "the employer's purported reasons for its actions were false, but the plaintiff must criticize it effectively enough so as to raise a doubt as to whether it was the true reason for the action." *Solt*, 837 F.Supp. at 684 (citing *Naas*, 818 F.Supp. at 877).

This she has not done. White only provides her own and Tomosky's affidavit to support her claims. White's affidavit is simply a chronology of the events leading to this litigation. It does not make any comment on discriminatory motive or animus on RHD's part. Tomosky's affidavit only makes generalized assertions that White was discriminated against by RHD. It does not criticize the purported reasons for White's demotion (and/or termination) and does not contradict RHD's reasons so as to show pretext. *Solt*, 837 F.Supp. at 684; *Josey*, 996 F.2d at 638–39. Tomosky's examples are not enough to

allow a reasonable jury to be able to rule that White has demonstrated by a preponderance of the evidence that either her race or her sex were determinative factors in her demotion and/or firing. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Due to the absence of evidence, White has failed to rebut RHD's proffered legitimate reasons, and accordingly, we GRANT Summary Judgment on Count III.

## COUNT IV—WILLIE MAE LEWIS

█ Dr. Willie Mae Lewis has sued RHD on the basis of the 1st, 5th, 13th and 14th Amendments pursuant to § 1981. She alleges that she was fired and then replaced by someone not in a protected class, allegedly because one RHD board member believed Lewis was not sociable enough in her initial interviews with RHD.

RHD concedes that Lewis has made a prima facie case of race discrimination. Because of this concession, the burden of production switches to RHD to assert legitimate, non-discriminatory reasons for Lewis's termination. *Metal Serv.*, 892 F.2d at 347. RHD asserts, and supports with deposition testimony, that it was always hesitant about hiring Lewis because it had concerns about her ability to communicate with other staff and with RHD clients. RHD also asserts that because of those concerns, Lewis was only hired for a three month probationary period.[11] Finally, RHD provides deposition testimony to indicate that its initial fears about Lewis turned out to be justified and her term was accordingly not renewed. RHD's explanation is sufficient to show legitimate, non-discriminatory reasons for the termination and serves to rebut Lewis's prima facie case.

As a result, the burden of production returns to Lewis to show that RHD's proffered reasons are merely a pretext for discrimination. This is a difficult burden to carry. *Fuentes*, 32 F.3d at 765. To rebut, Lewis provides her affidavit, wherein she avers that Kiff Weyl, a Caucasian man who was hired as her job-share partner, was treated better

---

11. It provides the letter confirming Lewis's employment, which states that the term was for three months, and Lewis confirmed in her deposition that she knew she was only hired for a three month probationary period.

than she in that he was given ample information about programs and resources before he began employment with RHD, but she was not. In addition, she avers that she and Weyl discussed the discrimination at RHD on several occasions and that he once told her, in front of Dr. Nancie Wolfe, that RHD was unfair to her and had problems with African Americans.[12]

We find that this affidavit does not serve to rebut RHD's proffered legitimate reasons. One hearsay affidavit of a non-decision maker's belief that an organization is discriminatory does not create such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" to make us disbelieve RHD's proffered reasons. *Fuentes*, 32 F.3d at 765. Accordingly, we GRANT Defendant's Motion for Summary Judgment on Count IV.

An appropriate Order follows.

### ORDER

AND NOW, this 7th day of March, 1995, upon consideration of Defendants' Motion for Summary Judgment and responses thereto, the Motion is hereby GRANTED.

---

**12.** Lewis's affidavit is strongly contested by RHD. It provides deposition testimony of both Weyl and Wolfe that deny that such a conversation ever took place. However, on a motion for summary judgment, we take plaintiff's facts as true, so the question here is only whether Lewis's affidavit serves to rebut RHD's proffered reasons.