John D. HORTON, Plaintiff

v.

John R. NICHOLSON, Defendant.

Civil Action No. 04–5409.

United States District Court,
E.D. Pennsylvania.

June 14, 2006.

John D. Horton, Pawnee Rock, KS, Pro se.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

*Pro se* Plaintiff John D. Horton ("Horton") brings this employment discrimination case against Defendant John R. Nicholson, Secretary of Veterans Affairs ("VA") based on his discharge from a probationary position at the Philadelphia VA Medical Center ("Philadelphia VAMC"). Presently before the Court are the parties'

cross-motions for summary judgment [Docs. # 22 and 23]. For the reasons that follow, the Court grants the Government's motion for summary judgment and denies Horton's motion for summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

Horton is a Hispanic male who was over the age of forty at the time of the events giving rise to this suit. On October 8, 2002, Horton applied for a job with the federal government by executing an Optional Form 306, "Declaration for Federal Employment."[1] On February 9, 2003, the Philadelphia VAMC hired Horton as a GS–7 library technician.[2] He began working that same day, and his employment was subject to a one-year period of probation and a suitability background investigation by the Office of Personnel Management ("OPM").[3] On February 10, 2003, Horton executed a second Optional Form 306 to affirm that his previous answers on the first Optional Form 306 were still accurate.[4]

On April 18, 2003, the Philadelphia VAMC received the results of OPM's suitability background investigation, which concluded that Horton was not suitable for federal employment because he had lied on both Optional Form 306s.[5]

The OPM investigation revealed Horton had falsely answered a question about his criminal record. Question 9 of the Optional Form 306 asked:

> During the last 10 years, have you been convicted, been imprisoned, been on probation or been on parole? (In-

cludes felonies, firearms or explosives violations, misdemeanors, and all other offenses.) *If "YES," use item 16 to provide the date, explanation of the violation, place of occurrence, and the name and address of the police department or court involved.*[6]

Horton answered "NO" on both Optional Form 306s.[7] In fact, Horton had been arrested and detained on August 31, 2001 at Pope Air Force Base in North Carolina for using a false identification card to attempt entry into the base.[8] During his detainment, Horton smashed a florescent light fixture in an interview room, urinated and defecated in a holding cell, and smeared feces on the walls of the holding cell.[9] Horton was charged with various federal offenses, tried by a United States Magistrate Judge in the Eastern District of North Carolina, found guilty, and sentenced to thirty days in prison. He served the full sentence.[10]

The OPM investigation also revealed Horton had falsely answered a question about his past employment experience. Question 12 of the Optional Form 306 asked:

> During the last 5 years, have you been fired from any job for any reason, did you quit after being told that you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management of any other Federal agency? *If "YES," use item 16 to provide the date, an explanation of the problem,*

1. Gov't Mot. for Summ. J. Ex. E.

2. *Id.* Ex. A.

3. *Id.*

4. *Id.* Ex. F.

5. *Id.* Ex. D.

6. *Id.* Exs. E & F.

7. *Id.*

8. *Id.* G.

9. *Id.*

10. *Id.* Exs. H, B, C.

*reason for leaving, and the employer's name and address.*[11]

Horton answered "NO" on both Optional Form 306s.[12] In fact, in 2001 Horton had resigned from federal employment at Shaw Air Force Base in South Carolina as part of an EEO settlement after he had been issued a notice of termination.[13]

Based on these revelations in the OPM suitability investigation, the VA sought to discharge Horton from his probationary position at the Philadelphia VAMC for "[g]ross falsification, misstatement, or concealment of a material fact in connection with employment or any investigation."[14] Horton was discharged effective June 13, 2003.[15]

On August 14, 2003—two months after his discharge—the United States Court of Appeals for the Fourth Circuit vacated and remanded Horton's conviction in connection with the Pope Air Force Base incident because he had not consented to trial by magistrate.[16] Upon remand, the district court dismissed all remaining counts.[17]

On November 11, 2004, Horton initiated this lawsuit by seeking leave to proceed *in forma pauperis.* The Court granted his request, and on November 29, 2004, he filed a *pro se* Complaint alleging that his discharge constituted employment discrimination based on his race, gender, and age. The Court referred Horton's case to the Plaintiff's Employment Panel for appointment of counsel,[18] but subsequently vacated its referral because all attempts to appoint counsel were declined on the basis of no merit or unavailability.[19] At the close of discovery, the Government moved for summary judgment and Horton responded by also moving for summary judgment. In support of his response to summary judgment and cross-motion for summary judgment, Horton presents no evidence other than a copy of the EEO settlement agreement between himself and Shaw Air Force Base.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[20] In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party.[21] However, the nonmoving party "cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact" sufficient to defeat summary judgment.[22]

11. *Id.* Exs. E & F.

12. *Id.*

13. *Id.* Exs. J & K.

14. *Id.* Ex. L. The initial notice of employment action incorrectly referenced Horton's "proposed removal," and was amended by a another notice to correctly reference Horton's "proposed discharge," in light of the fact that Horton was still within his one-year period of probation. *Id.* Ex. M.

15. *Id.* Exs. A & D.

16. *United States v. Horton,* 71 Fed.Appx. 254 (4th Cir.2003).

17. Gov't Mot. for Summ. J. Ex. H.

18. Order of November 29, 2004 [Doc. # 4].

19. Order of October 4, 2005 [Doc. # 12].

20. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

21. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

22. *Pastore v. Bell Tel. Co.,* 24 F.3d 508, 511 (3d Cir.1994); *see also Nieves v. Hess Oil Virgin Islands Corp.,* 819 F.2d 1237, 1252 (3d Cir.1987) (bald allegations did not raise genu-

■ When cross-motions for summary judgment are presented, the court must evaluate each party's motion individually.[23] Since Horton's putative "cross-motion" is nothing more than a denial of the arguments upon which the Government's Motion for Summary Judgment is made, the Court will consider the Government's Motion first.[24] The Court will then consider Horton's Motion, "making reference to relevant findings from our consideration of the [Government's] Motion, and making additional findings as needed."[25]

## III. ANALYSIS

Horton claims that the VA "falsely accused [him] of being a convicted criminal and having been fired from a previous position ..., and having lied about the same on the Optional Form 306 Declaration for Federal Employment"[26] as a pretext to fire him on account of his race, gender, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[27] and the Age Discrimination in Employment Act of 1967 ("ADEA").[28] With respect to his criminal record, Horton asserts that his arrest, charges, conviction, and sentence relating to the Pope Air Force Base incident "never took place" because the Fourth Circuit eventually vacated his conviction.[29] With respect to his

past employment experience, Horton asserts that he was never fired from his job at Shaw Air Force Base because the EEO settlement agreement "cancelled the termination action and denominated the final personnel action a resignation."[30]

Although the Complaint does not so specify, Horton appears, based on subsequent representations to the Court, to rely on two theories of employment discrimination. First, he appears to assert a claim of disparate treatment, in that the VA illegally discharged him because of his membership in a protected class, Hispanic males over the age of forty. Second, he appears to assert a claim of illegal retaliation, in that the VA illegally discharged him because of the EEO settlement agreement he entered into with Shaw Air Force Base. For purposes of the instant cross-motions for summary judgment, the Court will analyze Horton's discrimination claims under both theories.

"The familiar *McDonnell Douglas* burden shifting analysis applies to [Horton's] claims of discrimination under both Title VII and the ADEA."[31] The Third Circuit has summarized that burden shifting analysis as follows:

> [Plaintiff] bears the initial burden of establishing a *prima facie* case by a pre-

ine issues of material fact that preclude summary judgment).

**23.** See *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir.1968).

**24.** See *Reinert v. Giorgio Foods, Inc.*, 15 F.Supp.2d 589, 594 (E.D.Pa.1998).

**25.** *Id.*

**26.** Compl. ¶ 13.

**27.** 42 U.S.C. § 2000e (2000).

**28.** 29 U.S.C. §§ 621–34 (2000). Although Horton's Complaint only invokes Title VII and not the ADEA as the basis for his discrim-

ination claim, it explicitly alleges that he was fired on account of his age in addition to his race and gender. Since Horton is proceeding *pro se* and clearly intended to sue under both Title VII and the ADEA, the Court will treat his Complaint as raising an employment discrimination claim under both federal statutes.

**29.** Compl. ¶ 9.A.

**30.** Pl.'s Resp. & Mot. for Summ. J. at 2.

**31.** *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003) (per curiam) (prima facie case of discrimination are "substantially the same" under Title VII and the ADEA).

ponderance of the evidence. When a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." If the defendant meets this burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted. The plaintiff must then establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable action.[32]

The Court now applies that burden shifting analysis to the case at bar.

### A. Horton Has Failed to Establish a Prima Facie Case

■ "A discrimination plaintiff establishes a prima facie case by evidence that is 'sufficient to raise a presumption that unlawful discrimination has occurred.' "[33] Although the elements of a prima facie case vary depending on the facts of each case,[34] to establish a prima facie case of disparate treatment Horton must show that: (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment.[35]

■ No matter how relaxed the prima facie case requirement may be, Horton has failed to establish a prima facie case of disparate treatment here. He presents no evidence showing that other employees who were not Hispanic males over the age of forty received more favorable treatment, i.e. that the VAMC did not discharge them or treated them more leniently for lying on their job applications. This conclusion is inescapable where Horton presents no evidence, other than a copy of his EEO settlement agreement. Horton's bald assertions that he was fired on account of his race, gender, and age are insufficient to make out the prima facie case necessary to survive summary judgment.[36]

■ Furthermore, to establish a prima facie case of illegal retaliation Horton must show that: (1) "he engaged in conduct protected by Title VII"; (2) "his employer took an adverse action against him either after or contemporaneous with the protected activity"; and (3) "a casual link exists between his protected conduct and the employer's adverse action."[37]

■ Here, Horton has not established a casual link between his EEO settlement with Shaw Air Force Base and the VAMC's decision to discharge him for lying on his job applications. Despite Hor-

---

**32.** *Id.* (citations omitted). This framework is derived from three Supreme Court cases. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**33.** *Miller v. Beneficial Mgmt. Corp.,* 977 F.2d 834, 847 (3d Cir.1992) (quoting *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir.1980)).

**34.** *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817.

**35.** *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

**36.** See *Hicks v. Arthur,* 878 F.Supp. 737, 740 (E.D.Pa.1995) (granting summary judgment for defendants on plaintiffs' disparate treatment claim where plaintiff merely relied on allegations in her deposition and failed to present any evidence as to disparate treatment).

**37.** *Slagle v. County of Clarion,* 435 F.3d 262, 265 (3d Cir.2006) (relying on *Weston v. Pennsylvania,* 251 F.3d 420, 430 (3d Cir.2001)).

ton's assertions to the contrary, the only evidence presented to the Court indicates that VAMC discharged him not because he entered into an EEO settlement but rather because he failed to disclose his resignation pursuant to that settlement on his Optional Form 306.

Therefore, because the Court finds no issue of material fact with respect to whether Horton has established a prima facie case of discrimination, the Government is entitled to summary judgment as a matter of law.

### B. The Government Has Offered a Legitimate, Nondiscriminatory Reason for Horton's Discharge

■ Even assuming, *arguendo*, that Horton established a prima facie case under one or both theories of discrimination, the Government has offered a legitimate, non-discriminatory reason for Horton's discharge. The VA discharged Horton because he lied on his job applications. The VA's notice of proposed discharge expressly cites Horton's blatant misrepresentations on the Optional Form 306s about his criminal record and employment history as the basis for discharge.[38] Likewise, the declaration of the VAMC's director of human resources, which was made for purposes of a related civil action in which no discrimination claims were at issue, states that the VA terminated Horton based on the OPM's revelation that "Horton falsified his application for employment."[39] The OPM suitability background investigation report corroborates the nondiscriminatory basis for the VA's decision. First, when asked about any prior convictions or terms of imprisonment during the last ten years, Horton said he had none despite

having been convicted and jailed for the incident at Pope Air Force Base. Second, when asked whether he had left a job by mutual agreement because of specific problems, Horton said he had not despite resigning from his job at Shaw Air Force Base pursuant to a settlement agreement entered into after he received a notice of termination. Short of pleading otherwise, Horton presents no evidence creating any dispute with respect to the basis for his discharge or the existence of his conviction and resignation from employment.

### C. The Government's Reason for Discharging Horton is not Pretextual

■ In *Fuentes v. Perskie*, the Third Circuit provided guidance on the evidentiary showing a plaintiff must make to survive a motion for summary judgment where the defendant offers a legitimate, nondiscriminatory reason for its action.[40] The Court held:

> [T]he plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendants so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer discrimination was more likely than not a motivating or determinative cause of the adverse employment action.[41]

In other words, a discrimination plaintiff at this stage of the *McDonnell Douglas* burden shifting analysis carries the burden of production to "show by a preponderance of the evidence that the employer's explanation is pretexual (thus meeting the plaintiff's burden of persuasion)."[42]

---

38. Gov't Mot. for Summ. J. Exs. L & M.

39. *Id.* Ex. A.

40. *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994).

41. *Id.* at 762.

42. *Id.* at 763.

■ With those principles in mind, the Court again stresses that Horton has only submitted one piece of evidence, a copy of the EEO settlement agreement. But what Horton lacks in evidence, he attempts to make up for with bald assertions about the true nature of the Government's reason for discharging him. First, Horton argues that he did not lie about his criminal history when he failed to disclose his prior conviction because that conviction never existed upon being vacated by the Fourth Circuit. Second, Horton argues that he was not obligated to disclose his resignation from employment at Shaw Air Force Base pursuant to the EEO settlement agreement. He claims the EEO settlement agreement "cancelled" any personnel action against him and that "cancellation meant that it no longer existed and had totally and completely vanished from the memory of the federal government." [43] Both of these arguments rely on the same brand of historical revisionism to establish pretext: the VA's reasons for discharging Horton were based on information that allegedly never existed, and, therefore, the VA's reasons amount to a pretext for discrimination.

Horton's first argument fails on its own terms. When the VA discharged Horton for, in part, failing to represent his conviction on both Optional Form 306s, *the Fourth Circuit had not yet vacated his conviction.* Thus, whatever effect Horton thinks the Fourth Circuit's decision may now have on the legal status of his conviction, that conviction stood at all times material to this suit, i.e. when Horton completed both Optional Form 306s and when the VA discharged him for failing to disclose the conviction on the Option Form 306s. The Fourth Circuit's decision simply has no bearing on whether the Government relied on Horton's misrepresentation

about his conviction as a pretext for discriminatorily discharging him. Thus, Horton's first argument neither casts doubt upon the Government's reason for discharging him nor raises an inference of discrimination.

Horton's second argument also fails. First, the EEO settlement agreement between Horton and Shaw Air Force Base did nothing more than settle certain discrimination claims Horton made against Shaw Air Force Base and denominate his departure from employment there a resignation rather than a termination.[44] The agreement did not, contrary to Horton's claims, seal or erase the existence of a settlement and the fact that Horton had resigned from his position at Shaw from the eyes of all other branches and agencies of the federal government. Question 12 of the Optional Form 306 asked, among other things, whether Horton had ever left a job by mutual agreement because of specific problems, and thus Horton lied when he answered "NO." Second, even if Horton is correct that Shaw Air Force Base breached the settlement agreement by providing certain information to OPM for its background investigation, that breach has no relevance to this discrimination suit. Horton's generalized grievance that the Government acted inappropriately by sharing information about his tenure at Shaw Air Force Base does not satisfy Horton's burden of production for establishing pretextual discrimination.

Thus, Horton has failed to meet his burden of production under *Fuentes* and summary judgment in favor of the Government is appropriate. Keeping in mind the Court's obligation to independently evaluate Horton's cross-motion for summary judgment, the Court concludes, based on the findings and analysis above, that Hor-

---

43. See Pl.'s Resp. & Mot. for Summ. J. at 8–9. 44. *Id.* Ex. A.

ton has failed to demonstrate that he is entitled to judgment as a matter of law. Horton has not established a prima facie case of discrimination. Even assuming he has, Horton has not established that the Government's legitimate, non-discriminatory reason for discharging him was a pretext for discrimination. Thus, there is no basis for granting summary judgment in favor of Horton's Title VII and ADEA claims.

### D. Horton's Evidentiary Objections

In the course of a forty-eight page reply brief, submitted without leave to exceed the Court's standard ten-page limit, Horton lodges a number of rambling, incoherent, and conclusory objections to the evidence presented by the Government in support of its motion for summary judgment. Horton's objections rest mainly on authenticity and hearsay grounds. Given that Horton was not granted leave to file such a lengthy reply brief, the Court addresses his arguments in summary fashion.

 The Third Circuit "has not precluded reliance on unauthenticated documents to oppose a motion for summary judgment, so long as they are ultimately 'reduc[ible] to admissible evidence.' "[45] Here, both documents to which Horton objects on authenticity grounds—the OPM suitability background investigation report and the notice of termination from employment at Shaw Air Force Base, meet this standard. Both documents were generated by government agencies and would be reducible to admissible evidence at trial through a variety of techniques, including witness testimony. Moreover, even if the Court accepted his objection, the notice of termination itself provides no independent evidentiary value because the issue of whether Horton actually faced termination is immaterial to the discrimination claims at bar.

Furthermore, Horton's hearsay objections are misplaced. He argues that the Government relies on hearsay statements contained in the affidavit of Gerald Morelli, the director of human resources for the VAMC, to establish that Horton lied on his job application.[46] Morelli's statements are not presented to establish the truth of matters asserted in the OPM background investigation report, but rather to establish the VAMC's non-discriminatory reasons for terminating Horton in reliance on the representations in that report.

## IV. CONCLUSION

Based on the foregoing analysis, the Court grants the Government's Motion for Summary Judgment and denies Horton's Motion for Summary Judgment because no genuine dispute of material fact exists with respect to Horton's claims under Title VII and the ADEA. Horton has provided no evidence establishing a prima facie case of discrimination. Moreover, the Government has offered uncontroverted evidence establishing a legitimate, nondiscriminatory reason for discharging Horton: his misrepresentations about his criminal record and work history made on his job applications. Thus, the Government is entitled to judgment as a matter of law.

### ORDER

**AND NOW**, this 14th day of June 2006, upon consideration of Defendant's Motion for Summary Judgement [Doc. # 22], Plaintiff's Objections thereto and Cross–Motion for Summary Judgment [Doc.

**45.** *Lexington Ins. Co. v. Western Pa. Hosp.,* 423 F.3d 318, 329 n. 6 (3d Cir.2005) (citing *Williams v. Borough of West Chester,* 891 F.2d 458, 466 n. 12 (3d Cir.1989)).

**46.** See Gov't Mot. for Summ. J. Ex. A.

# 23], Defendant's Response to Plaintiff's Objections and Response to Plaintiff's Cross–Motion for Summary Judgment [Doc. # 24], and Plaintiff's Reply [Doc. # 27], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Summary Judgment is **GRANTED;**

2. Plaintiff's Cross–Motion for Summary Judgment is **DENIED;**

3. Judgment is entered for Defendant and against Plaintiff on all counts in the Complaint.

The Clerk of Court is **DIRECTED** to **CLOSE** this matter.

It is so **ORDERED.**